1
2
3
4
5
6
7

8        UNITED STATES DISTRICT COURT

9        SOUTHERN DISTRICT OF CALIFORNIA

10

11   SHEILA GARCIA, et al.,                    Case No.:  15cv189-JLS (NLS)

12                           Plaintiffs,
                                            **ORDER GRANTING DEFENDANTS'**
13   v.                                     **EX PARTE APPLICATION FOR AN**
                                            **ORDER REQUIRING PLAINTIFFS**
14   COUNTY OF SAN DIEGO, et al.,            **TO SUBMIT TO MENTAL**
                                            **EXAMINATIONS BY REBUTTAL**
15                           Defendants.     **EXPERTS [ECF No. 74]**

16

17                                          **and**

18
                                            **MODIFYING SCHEDULING**
19                                          **ORDER**

20

21       Before the Court is Defendants' request for permission for their rebuttal experts to

22   perform mental evaluations of Plaintiffs Sheila Garcia, Cassandra Garcia, C.N.G., and

23   C.J.G pursuant to Rule 35 of the Federal Rules of Civil Procedure.  ECF No. 74.

24   Plaintiffs opposed the application (ECF No. 77), and Defendants filed a reply (ECF No.

25   79).  For the reasons explained below, the Court **GRANTS** Defendants' *ex parte*

26   application.

27   *///*

28   *///*

1

## I.  BACKGROUND

This case stems from the actions of social workers for the County of San Diego ("County") in removing Plaintiffs Cassandra Garcia and her two minor siblings from their home and placing them in the County's Polinsky Children's Center.  Plaintiffs challenge the constitutionality of these actions and also allege a claim for intentional infliction of emotional distress.  ECF No. 1.  They seek damages for great emotional and psychological distress, humiliation, and mental anguish, in addition to other forms of relief.  Id.

On October 20, 2017, the parties exchanged their initial expert designations and the reports of their retained experts.  ECF No. 74 at 2.  Plaintiffs designated forensic psychologist Glenn S. Lipson, Ph.D. and psychiatrist Lester M. Zackler, M.D.  Id.  Dr. Lipson was retained "to address the emotional distress suffered by [all four Plaintiffs]." He "conducted evaluations of the Garcia family," which included multiple days of "behavioral observations" and interviews, and "administer[ed] psychological testing." Dr. Zackler was retained "to assess [Cassandra's] current mental status, review her past history, and to provide a diagnostic assessment and treatment plan."[1]

Pursuant to the Court's current scheduling order, fact discovery closed on July 26, 2017, rebuttal expert reports were due to be exchanged by November 10, 2017, and expert discovery is to be completed by December 1, 2017.  ECF No. 70.

## II.  LEGAL STANDARD

Under Rule 35, a court may order a mental examination of a party whose mental condition is in controversy, so long as the examination is conducted by "a suitably licensed or certified examiner."  Fed. R. Civ. P. 35(a)(1).  The requesting party must demonstrate good cause for the examination and provide notice to all parties, including

---

[1] This information was taken from the expert reports of Dr. Lipson and Dr. Zackler, which have been filed under seal.  However, Defendants quoted these same excerpts in their *ex parte* application (ECF No. 74 at 2-3), which was not redacted, and Plaintiffs have not objected.  For this reason, the Court deems it unnecessary to redact this language in the instant order.

the person to be examined.  Fed. R. Civ. P. 35(a)(2)(A).  If good cause is shown, the court's order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it."  Fed. R. Civ. P. 35(a)(2)(B).

  The "good cause" and "in controversy" requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case," unless the pleadings specifically assert a mental or physical injury, such as in a negligence action. Schlagenhauf v. Holder, 379 U.S. 104, 118-19 (1964).  Merely claiming damages for emotional distress is insufficient to place a party's mental condition "in controversy." Turner v. Imperial Stores, 161 F.R.D. 89, 98 (S.D. Cal. 1995).  Rather, courts will order an independent mental examination where the plaintiff alleges emotional distress damages and one or more of the following:

> (1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of Rule 35(a).

Turner v. Imperial Stores, 161 F.R.D. 89, 95 (S.D. Cal. 1995).[2]

## III. DISCUSSION

  Defendants seek permission to have their rebuttal experts conduct their own independent mental examinations ("IMEs") of Plaintiffs before drafting rebuttal reports. ECF No. 74 at 1.  Plaintiffs object to Defendants' request, arguing that Defendants should have anticipated Plaintiffs' designations and made the request for these mental evaluations during the fact discovery stage.  Id. at 5, 7-10.  Plaintiffs also point out that Defendants failed to comply with this Court's Chambers Rules by raising their issue *ex*

---

[2] Because the Ninth Circuit has not provided guidance on the "in controversy" requirement, district courts regularly apply the test announced in Turner.  See Alexis v. Rogers, No. 15CV691-CAB (BLM), 2017 WL 1073404, at *3 (S.D. Cal. Mar. 21, 2017) (collecting cases).

*parte* and that Defendants have not shown good cause for the Court to modify its scheduling order to allow late discovery. Id. at 5-7. Finally, Plaintiffs contend that granting Defendants' request would prejudice Plaintiffs. Id. at 10-11.

### a. **Procedural Issues**

Plaintiffs first argue that the Court should not consider Defendants' application because Defendants did not comply with this Court's Chambers Rules or its August 19, 2015 order (ECF No. 30) by filing its application *ex parte*. ECF No. 77 at 5-6. Defendants respond that they filed the request *ex parte* because of the looming deadlines for completing rebuttal expert reports and expert discovery. See ECF Nos. 79 at 4 n.1, 79-1 ¶ 12.

This Court's Chambers Rules require counsel to meet and confer on all issues before bringing them to the Court. If the parties are unable to resolve their dispute, they are to file a joint motion for determination of their discovery dispute. The original scheduling order entered in this case, which Plaintiffs reference, reiterates the requirement that counsel first meet and confer and then states that "[i]f the parties reach an impasse on any discovery issue, counsel shall file an appropriate motion within the time limit and procedures outlined in the undersigned magistrate judge's chambers rules." ECF No. 30 ¶ 6. Under these rules, the "appropriate motion" would indeed have been a joint motion.

That being said, the Court is cognizant of the fact that the joint motion procedure takes time, in particular because the parties are required to exchange drafts of their memorandum so that each side may address the opposition's arguments. Defendants first learned that Plaintiffs had retained a forensic psychologist and a psychiatrist to conduct IMEs when Plaintiffs served their expert reports on October 20, 2017. ECF No. 74 at 1. Defendants responded on October 24, 2017, by advising that Defendants planned to designate at least one rebuttal expert and wished to set up IMEs on October 30, 2017, and November 1, 2017. ECF No. 77-1 ¶ 11. Plaintiffs' counsel objected and, after some back and forth, counsel met and conferred on October 30, 2017, but were unable to

resolve their dispute. ECF No. 74-5 ¶¶ 5-8. What the Court finds noteworthy here is that Defendants' counsel attempted to schedule IMEs quickly so that Defendants' expert still could complete their reports by the November 10, 2017 deadline. Likewise, Defendants ultimately sought relief *ex parte* in an effort to at least complete the examinations and reports before the close of expert discovery. ECF No. 74 at 8. Given that Defendants' efforts were targeted at resolving this issue without necessitating yet another amendment of the scheduling order, the Court declines to deny Defendants' application on this basis alone.

### b. Good Cause Exists to Modify the Scheduling Order

As previously noted, a party seeking permission to conduct an IME must demonstrate good cause for the examination to occur and that the mental health of the party to be examined is "in controversy." Fed. R. Civ. P. 35(a); Schlagenhauf, 379 U.S. at 118-19. Plaintiffs do not dispute that their mental condition is in controversy. ECF No. 77 at 8. Nor could they, given that four of the five Turner factors are satisfied in this case. Specifically, in addition to conceding that their mental condition is in controversy, Plaintiffs have alleged a cause of action for intentional infliction of emotional distress, they seek damages for "great emotional and psychological distress," and they now have offered expert reports to support their emotional distress claims. See Turner, 161 F.R.D. at 95.

As for the good cause requirement, Defendants contend that good cause exists because they should be allowed to rebut the opinions offered by Plaintiffs' experts and any competent, fair rebuttal requires examination of Plaintiffs by Defendants' experts. ECF No. 74 at 8. Plaintiffs do not specifically quibble with Defendants' rationale for seeking the IMEs, but rather contend that IMEs are part of fact discovery, which closed on July 26, 2017, and that Defendants have not shown good cause to alter the scheduling order. ECF No. 77 at 6-10.

Trial courts "set schedules and establish deadlines to foster the efficient treatment and resolution of cases. Those efforts will be successful only if the deadlines are taken

seriously by the parties." Wong v. Regents of the Univ. of Calif., 410 F.3d 1052, 1060 (9th Cir. 2005). "Courts set such schedules to permit the court and the parties to deal with cases in a thorough and orderly manner, and they must be allowed to enforce them, unless there are good reasons not to." Id. at 1062. Rule 16(b)(4) of the Federal Rules of Civil Procedure requires a showing of good cause before modifying a pretrial schedule. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." Johnson v. Mammoth Recreations, 975 F.2d 604, 609 (9th Cir. 1992). Good cause exists if the party can show that the schedule "cannot reasonably be met despite the diligence of the party seeking the extension." Id.

Plaintiffs' extensive arguments as to why Defendants should not be allowed to conduct IMEs after the close of fact discovery ring hollow, given that Plaintiffs themselves conducted their IMEs over the course of several days between October 3, 2017 and October 15, 2017, which was over *two months* after fact discovery closed. Because Plaintiffs do not appear to be offering to withdraw their reports, fairness dictates that Defendants have an opportunity to rebut Plaintiffs' expert evidence. Furthermore, the Court finds that Defendants were diligent in attempting to schedule the IMEs promptly after receipt of Plaintiffs' expert reports and within the timeline for expert discovery. The Court, therefore, finds that Defendants have shown good cause both to conduct the IMEs, see Fed. R. Civ. P. 35(a), and to justify an extension of the deadline for completing this discovery, Johnson, 975 F.2d at 609.

### c. **Scope of Examinations**

Defendants propose to have their rebuttal expert, Dr. Dominick Addario, evaluate Plaintiffs Sheila Garcia, Cassandra Garcia, and C.N.G. at Dr. Addario's office, located at 3010 First Avenue, San Diego, CA 92103. ECF No. 74 at 4. Dr. Addario intends to conduct face-to-face clinical interviews with these Plaintiffs, during which background information/history will be collected and a mental status examination will be conducted. Id. He also plans to conduct psychological testing, which may include (1) the MMPI-1 and the Millon Clinical Multiaxial Inventory-III, which assess depression, personality

6

1  features, symptoms and thought processes, and (2) self-assessment tests depending on

2  symptomology, such as the Beck Depression Inventory Test and the Beck Anxiety

3  Inventory Test.  Id.  Dr. Addario's expert report will be offered to address/rebut the

4  opinions of Dr. Lipson and Dr. Zackler.

5       Defendants propose to have a second rebuttal expert, Dr. Steven Elig, evaluate

6  Plaintiff C.J.G. at Dr. Elig's office, located at 7744 Fay Avenue, Suite 200, San Diego,

7  CA 92037.  Id. at 5.  This evaluation will entail a face-to-face interview, during which

8  C.J.G. will be invited to talk and play and asked about the underlying events, her

9  symptom history, any functional difficulties, and her social history.  Id.  Dr. Elig's expert

10  report will be offered to address/rebut the opinions of Dr. Lipson.

11       Plaintiffs have requested to be heard as to the scope of the examinations and the

12  cost to Plaintiffs.  In the interests of resolving this issue expeditiously, the Court will not

13  set a hearing.  However, given the ages of the minors and unique facts of this case, the

14  Court does find it appropriate to set limits on the duration of these examinations.

15  Accordingly, the Court limits the examinations as follows:

16       1.  Dr. Addario shall have a total of <u>four hours</u> to examine Sheila Garcia.  This

17          time limit encompasses both clinical interviews and psychological testing.

18       2.  Dr. Addario shall have a total of <u>four hours</u> to examine Cassandra Garcia.  This

19          time limit encompasses both clinical interviews and psychological testing.

20       3.  Dr. Addario shall have a total of <u>four hours</u> to examine C.N.G. Garcia.  This

21          time limit encompasses both clinical interviews and psychological testing.

22       4.  Dr. Elig shall have a total of <u>two hours</u> to examine C.J.G.  This time limit

23          encompasses only a clinical interview, as no testing was proposed and the Court

24          has not authorized testing.

25  ### d.  **Modification of the Scheduling Order**

26       In order to allow time for this additional testing, the Court will extend the

27  deadlines for submitting rebuttal reports and completing discovery.  Additionally,

28  Plaintiffs have expressed concern that they will be prejudiced if Defendants are allowed

to conduct examinations and submit rebuttal reports without leaving time for Plaintiffs' designated mental health experts to review or comment on Defendants' expert reports. ECF No. 77 at 10. To address this concern, the Court will allow additional time for Dr. Lipson and Dr. Zackler to supplement their reports.

Accordingly, the Court hereby modifies its October 31, 2017 scheduling order (ECF No. 70) as follows:

1. The deadline for exchange of rebuttal reports is continued from November 10, 2017 to **December 4, 2017**.

2. The deadline for supplementing expert reports is **December 18, 2017**.

3. All expert discovery shall be completed by **December 18, 2017**.

All other dates and deadlines, including the January 3, 2018 deadline for filing pretrial motions, shall remain as previously set.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants application and orders the IMEs to proceed as set forth in Section (c) above. All expert discovery shall be completed by the deadlines set forth in Section (d).

**IT IS SO ORDERED.**

Dated:  November 14, 2017

Hon. Nita L. Stormes
United States Magistrate Judge