UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHEILA GARCIA, CASSANDRA GARCIA, C.N.G., a minor, and C.J.G., a minor, by and through their Guardian Ad Litem, DONALD WALKER<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY, POLINKSY CHILDREN'S CENTER, CAITLIN MCCANN, GLORIA ESCAMILLA-HUIDOR, SRISUDA WALSH, JESUS SALCIDO, MARTHA PALAFOX, LAURA QUINTANILLA, and Does 1 through 10, inclusive,<br><br>Defendants. | Case No.: 15-CV-189 JLS (NLS)<br><br>**ORDER DENYING DEFENDANTS CAITLIN MCCANN, GLORIA ESCAMILLA-HUIDOR, AND JESUS SALCIDO'S MOTION FOR RECONSIDERATION OF THE COURT'S DENIAL OF QUALIFIED IMMUNITY**<br><br>(ECF No. 172) |

Presently before the Court is Defendants Caitlin McCann, Gloria Escamilla-Huidor, and Jesus Salcido's (the "Moving Defendants") Motion for Reconsideration of the Court's Denial of Qualified Immunity ("Mot.," ECF No. 172). Also before the Court are Plaintiffs Sheila Garcia, Cassandra Garcia, C.N.G., and C.J.G.'s Opposition to ("Opp'n," ECF No. 175) and the Moving Defendants' Reply in Support of ("Reply," ECF No. 177) the Motion. The Court vacated the hearing on the Motion and took the matter under submission without oral argument. ECF No. 176. Having considered the Parties' arguments, the facts, and the law, the Court **DENIES** the Moving Defendants' Motion.

## BACKGROUND

The Court incorporates by reference the factual background as laid out in the underlying Order: (1) Denying Plaintiffs' Motion for Summary Judgment; (2) Granting in Part and Denying in Part County of San Diego's Motion for Summary Judgment; and (3) Granting in Part and Denying in Part Individual Defendants' Motion for Summary Judgment. *See* ECF No. 167 at 2–7.

Procedurally, on June 18, 2018, the Court ruled as to Defendants McCann and Huidor that, "[b]ecause the Court has determined the issue of whether the social workers' beliefs and actions were reasonable involves disputed issues of material fact, the Court does not make a qualified immunity determination here." *Id.* at 16 n.9 (citing *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003); *Santos v. Gates*, 287 F.3d 846, 855 n.12 (9th Cir. 2002)). As for Defendant Salcido, the Court similarly concluded that, "[b]ecause the issue of whether Salcido's conduct arose to the level of a constitutional violation is a question for the jury, an analysis of qualified immunity is premature." *Id.* at 23 n.11. The Moving Defendants filed the instant Motion for reconsideration of the Court's denial of qualified immunity on July 16, 2018. *See generally* ECF No. 172.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) permits a party to move a court to alter or amend its judgment. In the Southern District of California, a party may apply for reconsideration "[w]henever any motion or any application or petition for any order or other relief has been made to any judge and has been refused in whole or in part." Civ. L.R. 7.1(i)(1). The moving party must provide an affidavit setting forth, *inter alia*, new or different facts and circumstances which previously did not exist. *Id.*

"A district court may grant a Rule 59(e) motion if it 'is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law.'" *Wood v. Ryan*, 759 F.3d 1117, 1121 (9th Cir. 2014) (internal quotation marks omitted) (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc)) (emphasis in original). Reconsideration is an "extraordinary remedy, to be used

sparingly in the interests of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000). Ultimately, whether to grant or deny a motion for reconsideration is in the "sound discretion" of the district court. *Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003) (citing *Kona Enters.*, 229 F.3d at 883). A party may not raise new arguments or present new evidence if it could have reasonably raised them earlier. *Kona Enters.*, 229 F.3d at 890 (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)).

## ANALYSIS

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Demaree v. Pederson*, 887 F.3d 870, 878 (9th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Courts "use a two-step test to evaluate claims of qualified immunity, under which summary judgment is improper if, resolving all disputes of fact and credibility in favor of the party asserting the injury, (1) the facts adduced show that the officer's conduct violated a constitutional right, and (2) that right was clearly established at the time of the violation." *Demaree*, 887 F.3d at 878 (quoting *Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 788 (9th Cir. 2016) (en banc)) (internal quotation marks omitted).

Here, the Moving Defendants contend that the Court committed clear error, thus allowing reconsideration under Rule 59(e), by deferring the ruling on qualified immunity for Plaintiff's Section 1983 claims due to the presence of disputed issues of material fact. *See, e.g.*, Mot. at 1–3. The Court disagrees. The Ninth Circuit has made clear that "[c]ourts should decide issues of qualified immunity as early in the proceedings as possible, *but when the answer depends on genuinely disputed issues of material fact, the court must submit the fact-related issues to the jury*." *Ortega v. O'Connor*, 146 F.3d 1149, 1154 (9th Cir. 1998) (emphasis added) (citing *Liston v. Cnty. of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997); *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993)). Such is the case here, where the Court determined that genuinely disputed issues of material fact

remained as to whether Defendants McCann and Huidor had reasonable cause to believe that any of the Garcia children were in imminent danger of serious bodily injury and that the scope of the intrusion was reasonable necessary to avert that injury. *See* ECF No. 167 at 9–16. As to Defendant Salcido, the Court concluded that genuinely disputed issues of material fact remained as to whether he "acted in a manner so intentional and offensive as to shock the conscience." *Id.* at 23 & n.11.

The Court therefore **DENIES** the Moving Defendant's request for reconsideration. Even if the Court were to reconsider its prior Order, however, the Court would conclude on the current record and the state of the law as of January 28, 2013, that the Moving Defendants are not entitled to qualified immunity, for the reasons set forth below.

I. **Defendants McCann and Huidor**

Two claims against Defendants McCann and Huidor arising under Section 1983 are at issue for purposes of this Motion: (1) violation of Plaintiffs' Fourth and Fourteenth Amendment rights for removing the Garcia children without a warrant or exigency, and (2) violation of Sheila and Cassandra's Fourteenth Amendment rights to make medical treatment decisions for Cassandra. The Moving Defendants argue that, "[e]ven assuming that the facts, taken in the light most favorable to Plaintiffs, allege a violation of [their] rights, Plaintiffs' rights were not clearly established." Mot. at 7; *see also id.* at 15. The Moving Defendants therefore appear to concede that, at least as to Defendants McCann and Huidor, when the facts are viewed most favorable to Plaintiffs, Plaintiffs have alleged a violation of their constitutional rights.[1]

---

[1] On this record, the Court would have to agree that, taking the facts most favorably to Plaintiffs, Plaintiffs have adequately shown that Defendants McCann and Huidor violated Plaintiffs' constitutional rights. As to the claim concerning the removal of the Garcia children, resolving all factual disputes in favor of Plaintiffs, on January 22, 2013, Cassandra reported a single, mistaken sexual assault that occurred on approximately October 17, 2012, when her father allegedly mistook her for her mother, groped Cassandra in a dark room, and took a photograph. Pls.' Ex. 10, ECF No. 125-9, at 82:12–24, 101:9–20, 102:19–23, 117:11–21, 132:8–25, 139:8–19, 151:8–13; *see also* Decl. of Cassandra Garcia, ECF No. 148-3, ¶¶ 5–6. The referral provided for an evaluation within ten days, *see* Pls.' Ex. 37A, ECF No. 125-36, the least emergent response time in assigning a case. Pls.' Ex. 26, ECF No. 125-25, at 200:16–19. Although assigned to the case on January 23, 2013, *id.* at 144:19–21, Defendant McCann elected to take no action

4

The issue, therefore, is whether the rights that Plaintiffs claim Defendants McCann and Huidor violated were clearly established as of January 28, 2013, when the alleged constitutional violations occurred. The Court concludes that they were.

### A. *Removal of the Garcia Children*

The Moving Defendants first argue that Defendants McCann and Huidor are entitled to qualified immunity because it was not clearly established that removing the Garcia children without a warrant was unlawful on the facts of this case. *See* Mot. at 7–10. Based on precedent from the United States Supreme Court, the Ninth Circuit has long recognized that "[g]overnment officials are required to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes 'reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert

---

until January 28, 2013, five days later. *Id.* at 169:19–23. Defendant Huidor was Defendant McCann's supervisor. *Id.* at 244:14–18. During Defendant McCann's investigation, there were no allegations of other sexual assaults involving Cassandra, no allegations concerning any sexual assaults related to the other Garcia children, and no indications of any physical abuse of any of the Garcia children. *See* Pls.' Ex. 7 at 209:2–210:5, 218:20–6; Pls.' Ex. 26 at 269:7–14. Under these facts, there was no exigency allowing for warrantless removal of the Garcia children. *See, e.g.*, *Rogers v. Cnty. of San Joaquin*, 487 F.3d 1288, 1294–96 (9th Cir. 2007) (holding that delayed warrantless removal of children from home on allegations of insufficient medical treatment and unsafe home conditions was a constitutional violation); *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1106–09 (9th Cir. 2001) (reversing district court and concluding that reasonably jury could conclude that constitutional rights were violated where social worker delayed in removing fourteen-year-old from custody of her parents without a warrant on allegations that stepfather had been sexually molesting the girl every other night for several months).

Similarly, as to the claim concerning Sheila's and Cassandra's rights to make medical treatment decisions, Plaintiffs have alleged (and introduced evidence to support) that Defendants McCann and Huidor disregarded the decision of Sheila and Cassandra—made on the advice of Cassandra's physician, Dr. Juboori—that Cassandra be discharged on January 28, 2013, to Project Oz for intensive inpatient therapeutic treatment, instead taking Cassandra to PCC, which was primarily designed as a shelter as opposed to a treatment center. *See* Pls.' Ex. 15 at 77:18–25; Pls.' Ex. 17 at 40:14–24; Pls.' Ex. 25 at 124:17–125:25. There is no indication that Sheila was abusing or neglecting Cassandra or that Sheila's decision to have Cassandra treated at Project Oz was not in Cassandra's the best interest. Resolving all factual disputes in favor of Plaintiffs, Defendants McCann and Huidor therefore violated Sheila's and Cassandra's rights to have Sheila make medical treatment decisions for her daughter. *See, e.g.*, *Wallis v. Spencer*, 202 F.3d 1126, 1141–42 (9th Cir. 2000) (concluding genuine issues of material fact existed as to constitutional violation where the plaintiffs alleged that, after removal from their parents, children were subjected to physical examinations without the consent or presence of their parents).

that specific injury.'" *Mabe*, 237 F.3d at 1106–07 (quoting *Wallis*, 202 F.3d at 1138 (citing *Mincey v. Arizona*, 437 U.S. 385, 393 (1978))).

Not surprisingly, the Moving Defendants make much of *White v. Pauly*, 580 U.S. ___, 137 S. Ct. 548 (2017), in which the United States Supreme Court "reiterate[d] the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality,'" *id.* at 552 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)), and "must be 'particularized' to the facts of the case." *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also* Mot. at 10–11. The Supreme Court, however, "do[es] not require a case directly on point." *White*, 137 S. Ct. at 551 (quoting *Mullenix v. Luna*, 577 U.S. at ___, 136 S. Ct. 305, 308 (2015)) (internal quotation marks omitted). Instead, "existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (quoting *Mullenix*, 136 S. Ct. at 308) (internal quotation marks omitted).

The Moving Defendants argue that Defendants McCann and Huidor are entitled to qualified immunity because "[n]o Ninth Circuit or Supreme Court decision has held social workers liable for removing children where a parent in the house was accused of becoming intoxicated and sexually abusing a child in the home, and where it would take up to 72 hours to get a warrant." Mot. at 11. The Ninth Circuit has repeatedly made clear, however, that there is no exigency where the alleged abuse is non-recurring and the social worker fails to investigate and remove the children within the time required to secure a warrant. In *Mabe*, for example, the Ninth Circuit concluded that there was no exigency where the social worker opted to leave the residence after interviewing the child about the alleged molestation, "the improper touching had not been recurring," and it was likely that the social worker could secure a warrant before any further molestation could occur. *Id.* at 1008. Also militating against a finding of exigency is the fact that a risk is too "remote" to establish reasonable cause to believe that the children were in immediate danger, such as where children were allegedly locked up in their parents' workplace during the day, but "[t]he chance of accidental injury or of a fire breaking out . . . during the few hours that it

6

would take [the social worker] to obtain a warrant were very low." *Rogers*, 487 F.3d at 1295; *see also Malik v. Arapahoe Cnty. Dep't of Soc. Servs.*, 191 F.3d 1306, 1312, 1315 (10th Cir. 1999) (affirming that law was clearly established that no exigency existed where four-year-old child was removed after eighteen days on basis of ten photographs of the partially nude girl taken five months previously by an artist uncle who resided out of state).

This case is not distinguishable from the Ninth Circuit's decisions in *Rogers* and *Mabe* or the Tenth Circuit's decision in *Malik*. With only one alleged occurrence of sexual molestation having occurred over three months previously and with Defendant McCann having declined to assess an exigent risk between January 23 and 28, 2013—longer than it would have taken to secure a warrant—no reasonable social worker would have believed that Clarissa or her two sisters were in imminent danger of serious bodily injury on January 28, 2013, when the Garcia children were removed from their home without a warrant. Accordingly, on the facts as presented by Plaintiffs, Defendants McCann and Huidor would not be entitled to qualified immunity under the law as it was clearly established on January 28, 2013.[2]

### B. *Medical Treatment Decisions for Cassandra*

The Moving Defendants also contend that Defendants McCann and Huidor are entitled to qualified immunity because no precedent has found a social worker liable for placing a child in protective custody rather than in a psychiatric placement, meaning that the constitutional right at issue was not "clearly established." *See* Mot. at 14–15.

The Ninth Circuit has recognized that "[p]arents and children have a well-elaborated constitutional right to live together without governmental interference." *Rogers*, 487 F.3d at 1294 (quoting *Wallis*, 202 F.3d at 1136); *see also Wallis*, 202 F.3d at 1136 (citing *Santosky v. Kramer*, 455 U.S. 745, 753 (1982); *Stanley v. Illinois*, 405 U.S. 645

---

[2] The Ninth Circuit has since made clear in *Demaree* that, even following *White*, the Ninth Circuit "ha[s] here a very specific line of cases, culminating in *Rogers* and *Mabe*, which identified and applied law clearly establishing that children may not be removed from their homes without a court order or warrant absent cogent, fact-focused reasonable cause to believe the children would be imminently subject to physical injury or physical sexual abuse." *Demaree*, 887 F.3d at 884.

(1972); *Pierce v. Soc'y of Sisters*, 268 U.S. 510, 534–35 (1925); *Meyer v. Nebraska*, 262 U.S. 390 (1923)). "That right is an essential liberty interest protected by the Fourteenth Amendment's guarantee that parents and children will not be separated by the state without due process of law except in an emergency." *Wallis*, 202 F.3d at 1136–37 (citing *Stanley*, 405 U.S. at 651; *Campbell v. Burt*, 141 F.3d 927 (9th Cir. 1998); *Ram v. Rubin*, 118 F.3d 1306, 1310 (9th Cir. 1997); *Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991); *Baker v. Racansky*, 887 F.2d 183, 186 (9th Cir. 1989)). "The right to family association includes the right of parents to make important medical decisions for their children, and of children to have those decisions made by their parents rather than the state." *Wallis*, 202 F.3d at 1141 (citing *Parham v. J.R.*, 442 U.S. 584, 602 (1979) (holding that it is in the interest of both parents and children that parents have ultimate authority to make medical decisions for their children unless a "neutral fact finder" determines, through due process hearing, that parent is not acting in child's best interests)).

As can be seen from the above precedent, it is clear that a parent's right to make medical decisions for his or her child—and the child's corresponding right to have his or her parent make such decisions on the child's behalf—is part and parcel of the right of parent and child not to be separated without a warrant in the absence of exigent circumstances. It naturally follows that, if a parent is unlawfully deprived of his or her child, the parent is also deprived of the right to make medical treatment decisions for his or her child. *See, e.g.*, *Robinson v. Tripler Army Med. Ctr.*, 683 F. Supp. 2d 1097, 1107 (D. Haw. 2009) ("[Defendant]'s act of taking legal custody of [the child] away from Plaintiffs had the effect of terminating Plaintiffs' ability to make such [medical] decisions on [the child]'s behalf.").

The Moving Defendants again urge the Court to define the constitutional right at issue too narrowly, arguing that "[n]o prior precedent has held a social worker liable for placing a child in protective custody rather than in an outpatient psychiatric program when that child was being discharged from a psychiatric hospital." Mot. at 15. Although cases within the Ninth Circuit generally arise in the context of investigatory examinations

8

conducted without the consent or presence of parents in response to allegations of sexual molestation or abuse, *see, e.g.*, *Wallis*, 202 F.3d at 1141–42, the fact situation presented here is even more extreme: after being removed from her parents without reasonable cause, Cassandra was deprived for a period of many months of the benefit of the medical treatment her mother (and her physician and herself) deemed advisable, *i.e.*, psychiatric outpatient treatment at Project Oz, instead sending Cassandra to PCC. Accordingly, resolving all factual disputes in favor of Plaintiffs, neither Defendant McCann nor Defendant Huidor is entitled to qualified immunity.

## II. Defendant Salcido

The Moving Defendants claim that Plaintiffs' allegations fail to satisfy either prong of the qualified immunity test as to Defendant Salcido. *See* Mot. at 16. First, the Moving Defendants contend that, even viewing the facts in a light most favorable to Plaintiffs, "none of [Defendant Salcido's] alleged acts and omissions caused a violation of Cassandra's right to 'reasonable safety and minimally adequate care'" because "[n]othing that Salcido was alleged to have done caused Cassandra to be injured at PCC." *Id.* at 17. Second, the Moving Defendants claim that Cassandra's constitutional rights, even if violated, were not clearly established because "no prior precedent has held a social worker liable for violating a minor's right to 'reasonable safety and minimally adequate care' in circumstances even remotely similar to those here." *Id.* at 17–18.

Again, the Court disagrees. Viewing the facts here most favorably to Plaintiffs, the Garcia case was transferred to Defendant Salcido in early February 2013. *See* Pls.' Ex. 32, ECF No. 125-31, at 75:18–23. Defendant Salcido was responsible for the Garcia children until their case was transferred to Teresa Helms on April 30, 2013. *See* Pls.' Ex. 37C, ECF No. 125-36, at 68. During the approximately three months that Defendant Salcido was the Garcia family's caseworker, he allegedly did nothing to attend to Cassandra's psychiatric needs, which were exacerbated by her continued return to PCC. *See generally* Pls.' MSJ, ECF No. 113-1, at 12–13. Although Sheila requested that Cassandra be allowed to continue seeing her psychiatrist, Dr. Rashidi, *see* Pls.' Ex. 37C at 23, Cassandra allegedly

received no mental health services whatsoever between February 15, and March 22, 2013. *See* Opp'n at 13.

During this period, Cassandra made several suicide attempts and was psychiatrically hospitalized three times for suicidal ideations, *see* Pls.' Ex 37C at 39; Pls.' Exs. 43R–43T, ECF Nos. 125-42 at 49–67, reporting "increasing depression" due to removal from her parents' custody. *See* Pls.' Ex. 43R. Indeed, Cassandra even claimed that many of her suicide threats were made to "prove a point" to Defendant Salcido. *See* Pls.' Ex. 43T at 3. Apparently that "point" was ignored, as Defendant Salcido did not visit Cassandra and often could not be reached to discuss her care during this time. *See* Pls.' MSJ at 12 (citing Pls.' Ex. 1, ECF No. 125, at 147:13–24; Pls.' Ex. 2, 125-1, at 115:19–116:3; Pls.' Ex. 32 at 253:2–21, 262:18–23; Pls.' Ex. 37C at 34; Pls.' Ex. 43S at 2). Although Cassandra's physicians urged Defendant Salcido that Cassandra be provided a higher level of care, she was routinely discharged back to PCC. *See* Opp'n at 13 (citing Pls.' Ex. 28, 125-27, at 84:1–15; Pls.' Ex. 32 at 306:2–15; Pls.' Ex. 37C at 39, 43, 50; Pls.' Ex. 43U, ECF No. 125-42 at 68–69; Pls.' Ex. 44B, ECF No. 125-43 at 8–13).

After being discharged to PCC on March 22, 2013, Cassandra ran away (or went "AWOL") on March 24, 2013. *See* Pls.' Ex. 37C at 39, 42; Pls.' Exs. 40H & 40I, ECF No. 125-40. Following psychiatric readmission to Rady Children's Hospital on March 27, 2013, Cassandra informed her physician that "she is 'not safe . . . [she] know[s] that [she] will attempt to hurt [her]self if [she] leave[s] here,'" Pls.' Ex. 44B at 25, and that she intended to go AWOL if returned to PCC. *See* Pls.' MSJ at 13 (citing Pls.' Ex. 44C, ECF No. 125-43 at 14–15). Nonetheless, Cassandra was again discharged to PCC. Pls.' Ex. 44D, ECF No. 125-43 at 16–32, at 119. After only a few hours at PCC, she went AWOL with a couple of other girls from PCC. *Id.* The girls ended up in an apartment with two men, who repeatedly raped and beat Cassandra. *Id.*; *see also id.* at 120–24.

The Ninth Circuit "held in 1992 that '[o]nce the state assumes wardship of a child, the state owes the child, as part of that person's protected liberty interest, reasonable safety and minimally adequate care and treatment appropriate to the age and circumstances of the

child.'" *Tamas v. Dep't of Soc. & Health Servs.*, 630 F.3d 833, 846 (9th Cir. 2010) (quoting *Lipscomb ex rel. DeFehr v. Simmons*, 962 F.2d 1374, 1379 (9th Cir. 1992) (en banc)). "To violate due process, state officials must act with such deliberate indifference to the liberty interest that their actions 'shock the conscience.'" *Tamas*, 630 F.3d at 844 (quoting *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006)). "Conduct that 'shocks the conscience' is 'deliberate indifference to a known or so obvious as to imply knowledge of, danger.'" *Tamas*, 630 F.3d at 844 (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064 (9th Cir. 2006)). "[T]he deliberate indifference standard . . . requires a showing of an objectively substantial risk of harm and a showing that the officials were subjectively aware of facts from which an inference could be drawn that a substantial risk of serious harm existed and that either the official actually drew that inference or that a reasonable official would have been compelled to draw that inference." *Tamas*, 630 F.3d at 844 (citing *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1242 (9th Cir. 2010); *Conn v. City of Reno*, 591 F.3d 1081, 1095–96 (9th Cir. 2010); *Arledge v. Franklin Cnty., Ohio*, 509 F.3d 258, 263 (6th Cir. 2007); *James ex rel. James v. Friend*, 458 F.3d 726, 730 (8th Cir. 2006); *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 881 (5th Cir. 2004)). "[T]he subjective component may be inferred 'from the fact that the risk of harm is obvious.'" *Tamas*, 630 F.3d at 844 (citing *Arledge,* 509 F.3d at 263; *Hernandez*, 380 F.3d at 881). The Ninth Circuit has cautioned that "the duty of guarding . . . safety [of wards of the state] . . . is the quintessential responsibility of the social workers assigned to safeguard the well-being of this helpless and vulnerable population," and those social workers "cannot escape liability by shifting the onus onto the wards to request removal" from an inadequate environment. *Id.* at 843.

In *Henry A. v. Willden*, 678 F.3d 991 (9th Cir. 2012), for example, the Ninth Circuit reversed the district court's dismissal of claims against individual defendants on grounds of qualified immunity, finding that the plaintiffs had alleged violations of their clearly established constitutional rights. *Id.* at 1001. In *Henry A.*, the plaintiffs claimed that the defendant caseworkers "fail[ed] to provide foster children with necessary medical care."

*Id.* at 996–97. For example, "Henry A. was forced to change treatment providers more than ten times, but his medical records were not transferred properly," resulting in Henry being "given a dangerous combination of psychotropic medications and [being] hospitalized in an intensive care unit for two weeks, on the brink of organ failure." *Id.* at 997. Similarly, "[w]hen Jonathan D. became seriously ill with an impacted colon, the County failed to approve a colonoscopy or other treatment measures, despite repeated requests from Jonathan's doctor and his foster parent," forcing his physician to wait until his "condition became life-threatening, justifying emergency surgery without the County's permission," by which point "Jonathan had been in severe pain for months." *Id.*

The Ninth Circuit concluded that "the district court's qualified immunity analysis was too narrow," because it "looked at Plaintiffs' detailed factual allegations and essentially determined that Defendants were entitled to qualified immunity because the 'very action[s] in question' had not 'previously been held unlawful.'" *Id.* at 1000. Instead, the Ninth Circuit held, "the district court should have (1) determined the contours of a foster child's clearly established rights at the time of the challenged conduct under the 'special relationship' doctrine of substantive due process, and (2) examined whether a reasonable official would have understood that the specific conduct alleged by Plaintiffs violated those rights." *Id.* (citing *al-Kidd*, 563 U.S. at 741). The Ninth Circuit reasoned that "[i]t is clearly established that 'when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being," and that failure "to provide for his basic human needs," including "medical care[] and reasonable safety[,] . . . transgresses the substantive limits on state action set by . . . the Due Process clause." *Henry A.*, 678 F.3d at 1000 (citing *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 199–200 (1989)). Because these rights "are analogous to those of prisoners, . . . [courts] can also look to [the Ninth Circuit's] prisoner cases to further define what constitutes a 'serious medical need.'" *Henry A.*, 678 F.3d at 1001 (citing *Tamas*, 630 F.3d at 844–45). Under that line of cases, "ignoring the instructions of a treating physician . . . can amount

to deliberate indifference to serious medical needs." *Id.* (citing *Wakefield v. Thompson*, 177 F.3d 1160, 1164–65 (9th Cir. 1999)).

Applying those legal principles to the facts alleged in *Henry A.*, the Ninth Circuit "conclude[d] that a reasonable official would have understood that at least some of the specific conduct alleged by Plaintiffs violated those rights." *Id.* For example, "[a] reasonable official would have understood that failing to authorize Jonathan's medical treatment despite knowledge of his serious illness and repeated requests from his treating physician amounted to deliberate indifference to a serious medical need." *Id.* The Ninth Circuit therefore reversed the district court's dismissal of the plaintiffs' claims for violation of their right to be free from harm while involuntarily in government custody and their right to medical care, treatment, and services. *Id.*; *see also id.* at 998.

*Henry A.* in instructive as to both prongs of the qualified immunity analysis as to Defendant Salcido. Here, resolving all factual disputes in favor of Plaintiffs, Plaintiffs have demonstrated that Defendant Salcido—who, as Cassandra's caseworker, was charged with providing her with basic medical care and reasonable safety—violated Cassandra's constitutional rights. As in *Henry A.*, the instructions of the child's treating physicians went unheeded, and the child failed to receive basic and necessary medical care. The Moving Defendants' argument that "[n]othing that Salcido was alleged to have done caused Cassandra to be injured at PCC," *see* Mot. at 17, is disingenuous: according to Plaintiffs, Defendant Salcido's failure to provide Cassandra with basic and necessary psychiatric treatment resulted in several suicide attempts and hospitalizations, and even Cassandra's rape when she was discharged to—and once again escaped from—a facility ill-equipped to handle her fragile, and inadequately treated, mental state. With each additional suicide attempt, psychiatric hospitalization, and escape from PCC, the risk of harm faced by Cassandra in light of her inadequately treated psychiatric conditions became—or should have become—increasingly obvious to Defendant Salcido. Not only would a reasonable officer have recognized the objectively significant risk of harm facing Cassandra, but it is inconceivable, based on the facts as presented by Plaintiffs, that

Defendant Salcido did not become subjectively aware of that risk. Consequently, Plaintiffs' allegations and their supporting evidence are sufficient to establish that Defendant Salcido violated Cassandra's constitutional rights. *See Henry A.*, 678 F.3d at 998–1001.

Further, as *Tamas* and *Henry A.* make clear, these rights were clearly established in February through April 2013, when the alleged constitutional violations took place. *See also Conn v. City of Reno*, 591 F.3d 1081, 1102 (9th Cir. 2010), *cert. granted, judgment vacated*, 563 U.S. 915, *opinion reinstated*, 658 F.3d 897 (9th Cir. 2011) (finding qualified immunity was not warranted where pretrial detainee threatened suicide en route to prison). Accordingly, even if the Court were to reconsider its prior Order, resolving all factual disputes in favor of Plaintiffs, the Court would determine that Defendant Salcido is not entitled to qualified immunity. *See, e.g.*, *A.P. v. Cnty. of Sacramento*, No. 2:13-CV-01588-JAM-DB, 2017 WL 1476895, at *5 (E.D. Cal. Apr. 25, 2017) (denying summary judgment as to officials who knew about the child's serious autism but prohibited his foster parents from using the "sensory diet" prescribed by the child's occupational therapist and pediatrician because one aspect of the diet violated California law).

## CONCLUSION

In light of the foregoing, the Court **DENIES** the Moving Defendants' Motion for Reconsideration (ECF No. 172).

**IT IS SO ORDERED.**

Dated: December 5, 2018

Hon. Janis L. Sammartino
United States District Judge